IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
4:15-CV-62-D

| | | |
|---|---|---|
| TRINA MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this action, plaintiff Trina Moore ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying her application for supplemental security income ("SSI") on the grounds that she is not disabled. The case is before the court on the parties' respective motions for judgment on the pleadings. (D.E. 33, 38). The motions have been fully briefed.[1] The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* 8 Mar. 2016 Text Order). For the reasons set forth below, it will be recommended that the Commissioner's motion be granted, plaintiff's motion be denied, and the Commissioner's final decision be affirmed.

I. BACKGROUND

A. Case History

Plaintiff filed an application for SSI on 15 September 2011. Transcript of Proceedings ("Tr.") 25. Although she alleged a disability onset date of 28 February 2011 (Tr. 25), SSI is payable no earlier than the month after that in which the application was filed (20 C.F.R. §

---

[1] Each party filed a memorandum in support of its motion (D.E. 34, 39), and plaintiff filed a response to the Commissioner's memorandum (D.E. 41).

416.335).  The application was denied initially and upon reconsideration, and a request for hearing was timely filed.  Tr. 25.  On 6 September 2013, a hearing was held before an administrative law judge ("ALJ"), at which plaintiff, her mother, and a vocational expert testified.  Tr. 48-98.  In a written decision dated 19 December 2013, the ALJ found that plaintiff was not disabled and therefore not entitled to SSI.  Tr. 25-42.  Plaintiff timely requested review by the Appeals Council.  Tr. 20-21.  On 9 September 2014, the Appeals Council admitted additional evidence (Tr. 1360-68), but denied the request for review (Tr. 1-7).  At that time, the decision of the ALJ became the final decision of the Commissioner.  20 C.F.R. § 416.1481.  Plaintiff commenced this proceeding for judicial review on 16 April 2015, pursuant to 42 U.S.C. § 1383(c)(3).  (*See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Am. IFP Mot. (D.E. 8); Order Allowing Am. IFP Mot. (D.E. 9); Compl. (D.E. 10)).

> **B.**     **Standards for Disability**

The Social Security Act ("Act") defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 1382c(a)(3)(D).  "[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* (a)(3)(B).

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["Listings"] and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 416.920(a)(4)(i)-(v).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923. If a

medically severe combination of impairments is found, the combined impact of those impairments must be considered throughout the disability determination process. *Id.*

### C.    ALJ's Findings

Plaintiff was 28 years old on the date she filed her application for SSI and 29 years old on the date of the administrative hearing. *See* Tr. 40 ¶ 6. The ALJ found that she has a limited education. Tr. 40 ¶ 7; *see also* Tr. 54 (plaintiff's testimony that she completed eleventh grade); 20 C.F.R. § 416.964(b)(3) (defining limited education generally as the seventh through eleventh grade level of formal education). The ALJ further found that plaintiff has no past relevant work, although she had worked part time as a home health aide. Tr. 30 ¶ 3; 40 ¶ 5.

Applying the five-step analysis of 20 C.F.R. § 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the date of her application. Tr. 27 ¶ 1. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: affective/mood disorder; attention deficit-hyperactivity disorder ("ADHD"); borderline intellectual functioning[2]; multi-level degenerative disc disease; degenerative joint disease/arthritis of the knees; morbid obesity; and diabetes mellitus. Tr. 27 ¶ 2. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the Listings. Tr. 27 ¶ 3.

The ALJ next determined that plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b),[3] subject to the following limitations:

---

[2] Borderline intellectual functioning refers to a level of intellectual functioning higher than mental retardation. *See* Am. Psych. Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 740 (4th ed. text rev. 2000) ("DSM-IV-TR").

[3] The regulation provides, in part, that "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b); *see also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "L-Light Work," 1991 WL 688702. "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 416.967.

[T]he claimant is able to stand and/or walk for only 2 hours in an 8-hour day, with a sit/stand option at 30-minute intervals. The claimant is limited to occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching and/or crawling, but no climbing ladders, ropes or scaffolds. The claimant is limited to occasional use [of] both her lower extremities for pushing, pulling and/or operating foot controls. The claimant must avoid concentrated exposure to pulmonary irritants, such as fumes, odors, dusts, gases, poor ventilation and the like, and concentrated exposure to workplace hazards, such as dangerous moving machinery and unprotected heights. The claimant can perform simple, routine, repetitive tasks. The claimant can maintain concentration, persistence and pace and stay on task for 2-hour periods during a typical 8-hour workday, as required to perform simple, routine, repetitive tasks. The claimant requires a low stress work setting, further defined to mean no production-pace or quota-based work, rather she requires a goal-oriented job primarily dealing with things as opposed to people, with no more than occasional decision-making as part of the job and no more than occasional changes in the work setting. The claimant is limited to no more than occasional social interaction with supervisors and co-workers, but the job would not require the claimant to work directly with the public, as a component of the job, such as sales or negotiation, though incidental or causal contact with the public, as it may arise throughout the workday, is not prohibited. In addition, the claimant is limited to work consistent with a reasoning level of 1 or 2, but no higher, as defined by the *Dictionary of Occupational Titles (DOT)* and its companion publications.

Tr. 32-33 ¶ 4.

Based on his determination of plaintiff's RFC, the ALJ found at step four that plaintiff had no past relevant work. Tr. 40 ¶ 5. At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of hand packer, bench hand/inspector/sorter, and table worker. Tr. 40-41 ¶ 9. The ALJ accordingly concluded that plaintiff was not disabled from the date her application was filed, 15 September 2011. Tr. 42 ¶ 10.

### D.    Standard of Review

Under 42 U.S.C. § 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by

substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *See, e.g., Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the

Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *l-2.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## II.     ALJ'S DETERMINATION ON LISTING 12.05C

Plaintiff asserts that the ALJ's decision should be reversed and SSI benefits awarded or, alternatively, that the case should be remanded for a new hearing on the grounds that the ALJ erroneously determined that she does not meet or medically equal Listing 12.05C for intellectual disability. The court finds no error.

### A.     Applicable Legal Principles

The Listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. § 416.925(a). Therefore, if a claimant's impairments meet a listing, that fact alone establishes that the claimant is disabled. *Id*. § 416.920(d). An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); Soc. Sec. Ruling 83-19, 1983 WL 31248, at *2 (1983). The burden of demonstrating that an impairment meets a listing rests on the claimant. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

Even if an impairment does not meet the listing criteria, it can still be deemed to satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. § 416.925(c)(5). To

establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. § 416.926(a) (medical findings must be at least equal in severity and duration to the listed criteria). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531.

To satisfy Listing 12.05C for intellectual disability,[4] a claimant must meet three requirements. *See Hancock v. Astrue*, 667 F.3d 470, 473 (4th Cir. 2012). One, he must satisfy the introductory diagnostic description for intellectual disability ("diagnostic description requirement"). *See* Listing 12.00A. Specifically, the claimant must demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period," that is, before the age of 22. Listing 12.05. General intellectual functioning may be defined by the intelligence quotient ("IQ") obtained

---

[4] Listing 12.05 reads in relevant part:

12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
. . . .
C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

Listing 12.05C (effective 3 Dec. 2013 to 25 Feb. 2014). Effective 3 September 2013, the Social Security Administration substituted the term "intellectual disability" for the term "mental retardation" in the Regulations and Listings. *See* 78 Fed. Reg. 46,499-01, 2013 WL 3936340 (Soc. Sec. Admin. 1 Aug. 2013). The court uses both terms in this Memorandum and Recommendation depending on the context, as the ALJ did in his decision.

using one or more of the standardized, individually administered intelligence tests. *See* DSM-IV-TR 41.[5]

Adaptive functioning "refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." DSM-IV-TR 42. Areas in which deficits in adaptive functioning may exist include "communication, self-care, home living, social/inter-personal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Jackson v. Astrue*, 467 F. App'x 214, 218 (4th Cir. 2012) (citing *Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002); reciting areas of adaptive functioning listed in DSM-IV-TR 49). By specifying "deficit*s*" in adaptive functioning, the diagnostic description requires that there be at least two. Listing 12.05 (emphasis added); *see Hightower v. Colvin*, Civ. Act. No. 1:14-cv-02761-RBH, 2015 WL 5008713, at *7 (D.S.C. 20 Aug. 2015). This requirement is consistent with the definition of mental retardation in the DSM-IV-TR, which requires deficits or impairments in "at least two" of the foregoing areas. DSM-IV-TR 49.

---

[5] "The DSM is widely recognized as the authoritative reference used in diagnosing mental disorders." *United States v. Wooden*, 693 F.3d 440, 452 n.4 (4th Cir. 2012) (internal quotation marks omitted). "The definition of M[ental] R[etardation] we [*i.e.*, the Social Security Administration] use in our listings is consistent with, if not identical to, the definitions of MR used by the leading professional organizations," including the definition in the DSM. *Technical Revisions to Medical Criteria for Determinations of Disability*, 67 Fed. Reg. 20018–01, 2002 WL 661740, at *20022 (Soc. Sec. Admin. 24 Apr. 2002). The court notes that the current version of the DSM, the fifth edition ("DSM-5"), that was issued in May 2013, contains diagnostic criteria for intellectual disability different from those in the DSM-IV. *Compare* DSM-5 at 33 *with* DSM-IV-TR 49. However, to date, corresponding changes have not been made to the diagnostic description in Listing 12.05 or the severity requirements of Listing 12.05C. Moreover, the Social Security Administration has previously explained that the Listing 12.05 diagnostic definition of mental retardation was based on not only the American Psychiatric Association's definition in the DSM-IV, but also on the definitions used by three other leading professional organizations and that it does not "seek to endorse the methodology of one professional organization over another." *Technical Revisions*, 2002 WL 661740, at 20022. For this reason, as well as because most of the evidentiary record in this case was developed while the DSM-IV-TR was in effect, the court concludes that it remains appropriate to reference the diagnostic criteria in the DSM-IV-TR in applying Listing 12.05C. *See Hightower v. Comm'r of Soc. Sec. Admin.*, No. 1:14-2761-RBH-SVH, 2015 WL 5008668, at *17 (D.S.C. 12 June 2015) ("Listing 12.05 was not updated to reflect the changes present in DSM-5, which calls into question the general applicability of DSM-5 to evaluation of intellectual disability under the Listing."), *rep. & recomm. adopted by* 2015 WL 5008713, at *8 (20 Aug. 2015).

In addition to the diagnostic description, a claimant must satisfy the two requirements relating to the severity of the intellectual disability. Specifically, a claimant must demonstrate both a "valid verbal, performance, or full scale IQ of 60 through 70" (*i.e.*, "the IQ requirement") and "a physical or other mental impairment imposing an additional and significant work-related limitation of function" (*i.e.*, "the additional impairment requirement"). Listing 12.05C.

**B.      Analysis**

**1.      Additional Impairment Requirement**

The ALJ did not expressly address the additional impairment requirement. Nevertheless, it is clear that the additional impairment requirement is met. Additional impairments, beyond the intellectual impairment, that are found to be severe within the meaning of the Regulations satisfy this requirement of Listing 12.05C. *See Reynolds v. Colvin*, No. 6:13-CV-22604, 2014 WL 4852242, at *16 (S.D.W. Va. 19 Aug. 2014) ("[A]n additional severe impairment or combination of impairments will automatically establish the third prong of section 12.05C, as 'the Secretary has defined a severe impairment or combination of impairments as those which significantly limit an individual's physical or mental ability to do basic work activities.'" (quoting *Luckey v. United States Dep't of Health & Human Servs.,* 890 F.2d 666, 669 (4th Cir. 1989))), *rep. & recomm. adopted by* 2014 WL 4852250, at *6 (29 Sept. 2014). As noted, the ALJ found plaintiff to have several severe impairments in addition to borderline intellectual functioning. *See* Tr. 16 ¶ 2. Thus, as a matter of law, plaintiff meets the additional impairment requirement of Listing 12.05C.

## 2. IQ Requirement

The ALJ did address the other two requirements. As to the IQ requirement, the ALJ found that the IQ test scores plaintiff obtained did not accurately reflect her intellectual ability. In essence, he found the scores were not valid. He explained:

> Finally, the "paragraph C" criteria of listing 12.05 is not met because the claimant's level of functioning, as evidenced by her adaptive and achievement abilities, is higher than her scores in administered intellectual testing suggest. Because the claimant is intellectually functioning within the borderline range, she does not meet the criteria of intellectual disability as defined under the regulations.
>     . . . .
> In terms of intellectual ability, although the claimant's representative has argued that the claimant is intellectually disabled, the record shows her to be functioning within the borderline range. The claimant's scores in intellectual testing administered while still in school have been within the range of mild mental retardation (Exhibits 6F, 7F and 8F; see also Exhibits 1E/72, 76, 78 and 11E). However, examining psychologists found the claimant's level of functioning to be within the borderline range intellectually, given her higher adaptive/achievement abilities (Exhibits 6F/6 and 7F/6, 10, 15; see also Exhibit 1E/75, 80).
>
> J. Michael Bramble, a clinical psychologist, who evaluated the claimant in October 2007 upon referral from vocational rehabilitation, diagnosed mild mental retardation based on the claimant's (similar) scores in administered intellectual testing and concluded the claimant required a job coach and ongoing work supervision (Exhibit 8F). The undersigned gives little weight to Dr. Bramble's opinion because it is inconsistent with the overall record, which documents a higher level of functioning by the claimant. Dr. Bramble only examined the claimant on one occasion in October 2007 -- years before her alleged disability onset date. Dr. Bramble did not review the claimant's school records, which show her in special education classes, but not repeating any grades (Exhibit 7F/2; see also Exhibits 1E and 11E). The claimant also engaged in extracurricular activities while in school, including playing volleyball and basketball and cheerleading, as well as spending time with friends and doing many chores around the home (Exhibit 7F/2-3; see also Exhibit 26F/2) – all of which is suggestive [of] a higher level of intellectual functioning. Since leaving high school in the 11th grade to have her first child, the claimant has lived independently and been a primary care giver for three young children (Exhibits 8F/1 and 12F/1; see also Exhibit 5E). In addition, the claimant has taken classes and worked part-time as a home health aide without a job coach or ongoing supervision since Dr. Bramble's October 2007 evaluation. The claimant described her home health aide work as going into the homes of clients for 2-3 hours and cleaning, preparing food, and helping clients get to and from the bathroom. Although the claimant testified to having

difficulty understanding written directions, i.e. instructions on a box of food for which she received help from family members, she indicated she only stopped working in February 2011 because her employer did not have any more clients for her (Exhibit 3E/2). Because the overall record (including subsequent evidence) does not bolster or support Dr. Bramble's opinion, the undersigned gives it little weight.

. . . .

As discussed earlier, Dr. Bramble's opinions have been accorded little weight. Rather, greater weight has been accorded to the psychological assessments conducted in the school setting (Exhibit 7F), which correlates to higher functioning in the borderline range, despite her IQ testing much lower, such as the evaluations provided by Dr. Hooks in 1994 and by Dr. Seman in 1997. Dr. Seman even noted the claimant's test scores suggested she did not meet the criteria for L[earning] D[isabled] placement due to the score discrepancies. Back in 1994, Dr. Hooks noted the claimant demonstrated characteristics commonly seen in students identified as S[pecific] LD, including evidence of average intellectual ability among overall subaverage intelligence and subaverage to very superior adaptive skills, representing uneven development of both intellectual and adaptive behavior. Also, in 1997, Joanne Rittscho[f], a school psychologist, found the claimant's overall adaptive behavior was indicative of slow learner with low average functioning; noting her overall level of adaptive behavior could preclude placement in the Educable Mentally Handicapped setting, and that she failed to meet the criteria for Specific Learning Disabilities due [to a] significant negative discrepancy between her ability and achievement (Exhibit 6F).

Tr. 32 ¶ 3; 30 ¶ 3; 40 ¶ 4.[6]

Elsewhere in his decision, the ALJ cites to plaintiff's ability "to understand and respond articulately to questions posed to her at the hearing held in these proceedings by both the undersigned and her attorney" and her having cared for ill family members. Tr. 34 ¶ 4. As discussed below in the context of plaintiff's nonsatisfaction of the diagnostic description of intellectual disability, the ALJ further relied on the evaluation of the nonexamining state agency psychological consultants in finding plaintiff to be at the borderline intellectual level. *See* Tr. 104-05, 107-10 (ops. of Arne Newman, Ph.D.); 120-21, 123-25 (ops. of Steven E. Salmony, Ph.D.).

---

[6] A portion of the quoted discussion by the ALJ does not appear at step three of the sequential analysis. The fact that the reasons underlying the ALJ's determination on Listing 12.05C are not all set out at step three does not constitute legal error since the decision must be read as a whole. *See, e.g., Forbes v. Colvin*, No. 4:12–CV–211–FL, 2013 WL 4759086, at *8 (E.D.N.C.), *mem. & recomm. adopted by* 2013 WL 4759086, at *3 (4 Sept. 2013).

The court finds that the ALJ's rejection of the IQ scores showing her to be intellectually disabled was proper. "An ALJ has the discretion to assess the validity of an IQ test result and is not required to accept it even if it is the only such result in the record." *Hancock*, 667 F.3d at 474. More particularly, an ALJ may "reject [IQ] scores if they are inconsistent with other substantial evidence in the record such as conflicting professional opinions or other record evidence indicating that the claimant is historically higher achieving or has more advanced functional capacities than would be expected from someone with a below-average [IQ]." *Maybank v. Astrue*, No. C/A 4:08-0643-MBS, 2009 WL 2855461, at *11 (D.S.C. 31 Aug. 2009); *see also Powell v. Barnhart*, No. 6:04–CV–63, 2005 WL 1926613, at *4 (W.D. Va. 9 Aug. 2005) (holding that if an IQ score is "inconsistent with the remainder of evidence in the record on the claimant's daily activities and behavior, it need not be conclusive proof of mental retardation").

In accordance with this case law, the ALJ here acted properly in relying, in part, on medical opinions in determining that she is functioning at the borderline intellectual level. The ALJ's analysis of these opinions is supported by substantial evidence and is otherwise proper. *See generally* 20 C.F.R. § 416.927; Soc. Sec. Ruling 96-2p, 1996 WL 374188 (2 July 1996). With respect to Dr. Bramble's opinions specifically, the factors relied on by the ALJ— inconsistency of his opinions with the overall record, his having examined plaintiff only once, his lack of access to plaintiff's school records, and plaintiff's activities—are all proper considerations in discounting his opinions. *See* 20 C.F.R. § 416.927(c)(2), (4), (6).

It was also, of course, proper for the ALJ to consider plaintiff's activities in assessing her level of intellectual functioning. The record contains substantial evidence of each of the activities cited by the ALJ. Particularly when considered collectively and with the medical

opinions, these activities are sufficient to establish that plaintiff's level of functioning exceeds

that indicated by the IQ scores.  *See Hancock*, 667 F.3d at 475-76.

In *Hancock*, the Fourth Circuit upheld the ALJ's determination that the claimant did not

meet the IQ requirement, in part, on the basis of her actual functioning, which the ALJ found to

include shopping, paying bills, and making change; caring satisfactorily for three small

grandchildren; doing the majority of her household's chores; attending school to obtain a GED;

and doing puzzles for entertainment; and previously working as a battery assembler and drop

clipper.  *Id.*   These activities are roughly comparable to those by plaintiff in this case.

The lawfulness of the ALJ's determination that plaintiff failed to satisfy the IQ

requirement alone defeats her challenge to the ALJ's Listing 12.05C ruling because all three

requirements of the listing must be satisfied for the listing to apply.  The ALJ's decision is

subject to affirmance on this basis alone.

### 3.      Diagnostic Description Requirement

Nonetheless, the ALJ also found that plaintiff did not satisfy the diagnostic description of

intellectual disability because she lacked the requisite deficits in adaptive functioning.  The

ALJ's discussion of plaintiff's activities quoted above obviously bears on his analysis of the

diagnostic description of intellectual disability.  The ALJ also stated as follows:

> Given the claimant's adaptive abilities, and consistent with the determinations of
> Arne Newman Ph.D. and Steven Salmony, Ph.D., the State agency psychological
> consultants, who reviewed the record initially and on reconsideration (Exhibit 1A
> and 3A), the undersigned further finds the claimant does not satisfy the diagnostic
> criteria for intellectual disability set forth by Section 12.05 for intellectual
> disability; rather, borderline intellectual functioning is most consistent with the
> totality of the record.
>              . . . .
> In addition, the undersigned considered the mental assessments of Dr. Newan and
> Dr. Salmony, the State agency psychological consultants, who reviewed the
> record initially [and] on reconsideration (Exhibit 1A and 3A).  The undersigned
> gives greater weight to Dr. Salmony's assessment finding the claimant capable of

simple, routine, repetitive tasks in a stable, non-production oriented work setting with moderate limitation in her ability to interact with the public and supervisors (Exhibit 3A). The undersigned finds such assessment to be generally consistent with the overall record evidence, including the claimant's level of intellectual and adaptive functioning, mental status examination findings and reported activities. Similarly, the undersigned gives partial weight to Dr. Newman's assessment, as already discussed; her determination that the claimant requires a stable, low social (moderate limitation in ability to interact with the public), low production work setting (Exhibit 1A) is also generally consistent with the overall record evidence, though her rating of the "[paragraph] B criteria"[7] was inconsistent with her mental residual functional capacity findings.

    . . . .

For the reasons previously discussed herein, the claimant's adaptive skills are consistent with borderline intellectual functioning. The claimant was able to understand and respond articulately to questions posed to her at the hearing held in these proceedings by both the undersigned and her attorney. While the claimant was in special education classes before leaving school in the 11th grade, she had friends, played sports, and was a cheerleader (Exhibit 26F/2). The claimant lives alone with her three minor children; she has cared for ill family members and worked as a housekeeper and home health aide. Notably, the claimant reported diligently working to obtain her GED in August 2005, so that she could pursue less physical work because she was having difficulty performing housekeeping work in a timely fashion due to pain and swelling in her knees and legs (Exhibit 5F/4). In addition, as detailed below, treating and examining sources (other than Dr. Bramble) have not observed the claimant having any abnormal cognitive or intellectual deficits on examination; there is no indication of the claimant being declared incompetent. Taking into account the claimant's level of intellectual functioning and reading difficulties, the undersigned has limited her to work involving simple, routine, repetitive tasks with a reasoning level no greater than 1 or 2, as defined by the *Dictionary of Occupational Titles* and its companion publications. The undersigned has also limited the claimant to a low stress work setting, as defined above in finding #5.

Tr. 30 ¶ 3; 39 ¶ 4; 34 ¶ 4.

The ALJ's analysis of the opinions of Dr. Newman and Dr. Salmony is based on proper legal considerations and supported by substantial evidence. *See generally* 20 C.F.R. § 416.927(e)(2); Soc. Sec. Ruling 96-6p, 1996 WL 374180 (2 July 1996). The ALJ's further analysis of plaintiff's adaptive functioning is also supported by substantial evidence and is otherwise proper.

---

[7] *See generally* 20 C.F.R. § 416.920a; Listing 12.00C. The paragraph B findings by the ALJ are discussed below.

The court concludes that the ALJ's determination that plaintiff did not satisfy the diagnostic description of intellectual disability was proper. *See Hancock*, 667 F.3d at 475-76 & n.3 (upholding ALJ's determination that the claimant had no deficits in adaptive functioning and thereby did not satisfy the diagnostic description requirement based on the activities discussed above). The lawfulness of the ALJ's determination on plaintiff's nonsatisfaction of the diagnostic description in Listing 12.05 provides an independent basis for affirmance of the ALJ's decision.

### 4. Plaintiff's Arguments

The court has considered carefully all the arguments asserted by plaintiff in support of her contention that the ALJ erred in ruling that she did not meet or medically equal Listing 12.05C. All the arguments are wanting.

Plaintiff argues, for example, that the IQ scores plaintiff obtained did provide a valid measure of her intellectual functioning and that she does have deficits in adaptive functioning sufficient to satisfy the diagnostic description in Listing 12.05C. Much of her argument amounts to recitation of evidence favoring her position. She thereby essentially asks the court to reweigh the evidence. As noted previously, it is not the court's role to do so.

Plaintiff points out specifically that the 1994 report of Luellen C. Hooks, Ph.D. was the only report of an examining psychologist that expressly found plaintiff to have borderline overall intellectual functioning. *See* Tr. 282 (full report at Tr. 279-83); 597 (duplicate of Tr. 282; full duplicate report at Tr. 594-98). To the extent that plaintiff implies that a psychological evaluation cannot be deemed to show borderline intellectual finding unless it states so expressly, her contention is ill founded. Such a rule would handcuff an ALJ in interpreting the opinions

expressed in the evaluations and the weight to be accorded them. Plaintiff cites no authority for such a proposition.

Further, as noted, the ALJ found that there are two other evaluations by examining psychologists besides Dr. Hooks' evaluation showing that plaintiff functions at the borderline intellectual level although those additional evaluations do not use "borderline" terminology. They are the evaluations by William A. Seman, Ph.D. (Tr. 588-93) and Joanne Rittschof (Tr. 579-86) in July and April 1997, respectively, when plaintiff was age 14 and in fifth grade. Tr. 40 ¶ 4. The ALJ's characterization of Dr. Seman's and Ms. Rittschof's evaluations was proper.

Moreover, in determining plaintiff's level of intellectual functioning, including her level of adaptive functioning, the ALJ was not limited to the evaluations of examining psychologists, but was required to consider the entire record. As the ALJ's decision makes clear, he also considered the opinions of the nonexamining state agency psychological consultants, plaintiff's activities, and other evidence.

Plaintiff complains that the ALJ did not discuss the evaluations of her by school psychologist Carol Armistead, M.A., C.A.S. on 2 May 2000, when plaintiff was age 17 and in eleventh grade. Tr. 391-94. But that evaluation is included in an exhibit, Exhibit 11E, that the ALJ did discuss, and he made clear his assessment of such evaluations. As quoted above, the ALJ stated:

> The claimant's scores in intellectual testing administered while still in school have been within the range of mild mental retardation (Exhibits 6F, 7F and 8F; see also Exhibits lE/72, 76, 78 and 11E). However, examining psychologists found the claimant's level of functioning to be within the borderline range intellectually, given her higher adaptive/achievement abilities (Exhibits 6F/6 and 7F/6, 10, 15; see also Exhibit 1E/75, 80).

Tr. 30 ¶ 4. Moreover, an ALJ is not required to discuss every piece of evidence. *See Smith v. Colvin*, No. 4:14–CV–12–FL, 2015 WL 1249875, at *1 (E.D.N.C. 20 Jan. 2015) (quoting *Reid v.*

*Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014); *Doyle v. Colvin*, No. 7:12–CV–326–FL, 2014 WL 269027, at *10 (E.D.N.C.), *mem. & recomm. adopted by* 2014 WL 269027, at *1 (23 Jan. 2014).

Plaintiff also objects that the ALJ did not expressly discuss all of the school determinations placing her in the Educable Mentally Handicapped setting through eleventh grade. *See*, *e.g.*, Tr. 215, 218. The ALJ, though, made apparent his awareness that plaintiff had remained in special education classes through eleventh grade, stating as previously quoted, "the claimant was in special education classes before leaving school in the 11th grade." Tr. 34 ¶ 4. Not surprisingly, the ALJ also cited exhibits containing such determinations—Exhibits 1E and 11E. *See* Tr. 30 ¶ 3. Again, an ALJ is not required to discuss every piece of evidence.

Plaintiff contends that the ALJ erred in his finding that "as detailed below, treating and examining sources (other than Dr. Bramble) have not observed the claimant having any abnormal cognitive or intellectual deficits on examination; there is no indication of the claimant being declared incompetent." Tr. 34 ¶ 4. She argues that two other examining psychologists made such observations. One is Dr. Rittschof, who observed that plaintiff "needed many tasks re-explained or directions repeated in order to proceed with the assessment activities." Tr. 579. The other is Dr. Seman. He found: "[Plaintiff] accepted all tasks which were presented to her and she persisted with tasks, even sometimes in the face of obvious inability to complete them. . . . Tasks which involved reading and related skills were especially difficult for [plaintiff]." Tr. 589.

Plaintiff's argument presumes that the ALJ was saying that all treating and examining sources, other than Dr. Bramble, have not observed the claimant having the specified deficits. In fact, while the ALJ could admittedly have been clearer, he appears to be speaking of not all

treating and examining sources of record, but rather of the sources he discusses immediately after his finding. Again, he states, "*as detailed below*, treating and examining sources (other than Dr. Bramble) have not observed" the specified deficits. Tr. 34 ¶ 4 (emphasis added). He nowhere uses the modifier "all" or comparable language indicating that he is speaking of all treating and examining sources. In his subsequent discussion, he repeatedly points out unremarkable mental status examinations of plaintiff. Tr. 34 ¶ 4. The court finds no error.

Even if plaintiff's interpretation were deemed accurate, the error by the ALJ would be harmless. As discussed by the ALJ, the evaluations by Dr. Seman and Dr. Rittschof, at least as read by the ALJ, substantiate that plaintiff functions at the borderline intellectual level. They thereby tend to support, not impeach, the ALJ's assessment of Dr. Bramble's evaluation. Moreover, the ALJ's finding was just one of numerous findings underlying the ALJ's determination that plaintiff's deficits in adaptive functioning do not satisfy the diagnostic description. Plaintiff has therefore failed to show that the error it posits, even if deemed to have occurred, would have changed the outcome of this case and thereby been prejudicial. *See*, *e.g.*, *Garner v. Astrue*, 436 F. App'x 224, 226 n.* (4th Cir. 2011) (applying *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)); *Huffman v. Colvin*, No. 1:10CV537, 2013 WL 4431964, at *4 & n. 7, 7 (M.D.N.C. 14 Aug. 2013); *Presnell v. Colvin*, No. 1:12–CV–299–FDW, 2013 WL 4079214, at *6 (W.D.N.C. 13 Aug. 2013).

In his assessment of the so-called paragraph B criteria at step three of the sequential analysis, the ALJ found plaintiff to have moderate restrictions in activities of daily living; moderate difficulties in social functioning; and moderate difficulties in concentration, persistence, or pace. Tr. 31 ¶ 4. Plaintiff argues that these findings are inconsistent with the ALJ's determination that the claimant's deficits in adaptive functioning do not satisfy the

diagnostic definition of intellectual disability, requiring remand. It is true that such findings of moderate limitations can be inconsistent with a determination that the diagnostic description is not satisfied. *See*, *e.g.*, *Mebane*, 2014 WL 3510208, at *6-7; *Rothrock v. Colvin*, No. 1:13CV497, 2016 WL 1175189, at *7 (M.D.N.C. 23 Mar. 2016). But the court finds no inconsistency here.

In explaining his paragraph B findings, the ALJ made clear that plaintiff demonstrated good adaptive functioning notwithstanding the moderate limitations he found. He stated:

> In activities of daily living, the claimant has moderate restriction. The claimant was in special education classes and left school in the 11th grade after having her first child. The claimant testified to needing help filling out paperwork and following written instructions. However, the claimant is a primary care giver to three children, gives help to family members, and is generally independent in her activities of daily living. Accordingly, the undersigned finds that the claimant has no more than moderate restriction in this area.

> In social functioning, the claimant has moderate difficulties. The claimant testified she is irritable and has difficulty getting along with people. However, the claimant has a boyfriend, cares for her children, and spends time with her family. The claimant also reports going out to eat and to the movies (Exhibit 26F/2) and she indicated she only stopped working as a home health aide because her employer did not have any more clients for her. Therefore, based on the overall record, the undersigned finds that the claimant has no more than moderate restriction in this area.

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant testified to having problems learning and she is functioning intellectually in the borderline range. The claimant also receives treatment for ADHD and anxiety. However, the claimant is a primary care giver to her three children, maintains a household, and helps family members, including caring for those who are ill. Accordingly, the undersigned finds the claimant moderately restricted in this area.

Tr. 31 ¶ 3. This explanation, which is supplemented by the ALJ's elaboration elsewhere on plaintiff's level of adaptive functioning, adequately reconciles his paragraph B findings with his determination that plaintiff's level of adaptive functioning precludes her from satisfying the diagnostic definition of intellectual disability. He also thereby dispels any appearance of

inconsistency with his determination on the IQ requirement, which is grounded in part on plaintiff's level of functioning.

Other arguments raised by plaintiff do not merit separate discussion. They fail for reasons comparable to those discussed with respect to the arguments addressed above.

## III.    CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that the Commissioner's motion (D.E. 38) for judgment on the pleadings be GRANTED, plaintiff's motion (D.E. 33) for judgment on the pleadings be DENIED, and the Commissioner's final decision be AFFIRMED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 18 May 2016 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the**

**Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after the filing of objections.

This 4th day of May 2016.

James E. Gates
United States Magistrate Judge